Shoultz v. McPheeters.

---

No. 10009.

## SHOULTZ v. MCPHEETERS.

MASTER COMMISSIONER.— *Constitutional Law.*—*Habeas Corpus.*—So far as the statute, section 1404, R. S. 1881, confers judicial power on the master commissioner, *e. g.*, to grant writs of habeas corpus, it is in conflict with the Constitution and therefore void.

SAME.—*Practice.*—On appeal from the order of a master commissioner in a proceeding before him in habeas corpus, remanding a prisoner to the custody of the sheriff, the Supreme Court will affirm the judgment.

From the Washington Circuit Court.

*F. L. Prow, V. M. Hobbs* and *W. Hultz,* for appellant.

*S. B. Voyles* and *H. Morris,* for appellee.

ELLIOTT, C. J.—The civil code of 1881 provides for the appointment of master commissioners by the judges of the circuit courts of the State, and invests them with various powers and imposes upon them important duties. Section 419 is as follows: " Whenever the office of judge shall become vacant, or, in case of the absence of all the judges competent to act, or whenever such judge or judges, by reason of interest, is or are incompetent to act, or unable by reason of sickness, such master commissioner shall have all the power of any judge in vacation, to grant restraining orders, injunctions, writs of *habeas corpus,* and writs of *ne exeat,* and to appoint receivers, and hear and determine all motions and matters, and make all orders concerning the same." R. S. 1881, section 1404.

This section is in direct conflict with the letter and spirit of the Constitution of the State, and is utterly void.

Scrupulous care was taken by the framers of our Constitution to distribute the powers of government, and to define and fix the rights and powers of the great departments to which these rights and powers were distributed. The boundaries of each are marked with certainty and precision. There can be no doubt where the judicial power is vested. Section 1, of article 7, as originally framed, read thus: "The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such inferior courts as the General Assembly may establish." On the 14th day of March, 1881, the electors of the State, at a special election held on that day, ratified an amendment to the section and article named. This amendment reads as follows: "The judicial powers of the

State shall be vested in a Supreme Court, circuit courts, and such other courts as the General Assembly may establish." All judicial powers are, by force of this provision, vested in the courts of the State. The Legislature has no authority to invest any other tribunals than the courts with judicial powers.

It is certain that the Legislature can not exercise judicial powers. *The Columbus, etc., R. W. Co.* v. *The Board, etc.,* 65 Ind. 427; *Doe* v. *Douglass,* 8 Blackf. 10; *Young* v. *The State Bank,* 4 Ind. 301. Nor can these powers be vested elsewhere than in the tribunals designated or indicated by the Constitution. Judicial powers can not be delegated. Taking and following as guides these fundamental principles, we are led to the conclusion that judicial powers can not be vested in officers, such as master commissioners, appointed by the judges of the courts.

By the express provision of the paramount law, the whole judicial power of the State is vested in courts. Blackstone, following Lord Coke, says: "A court is defined to be a place where justice is judicially administered." 3 Com. 24. Of this statement it was well observed by the court, in *Hobart* v. *Hobart,* 45 Iowa, 501: "But this definition obviously wants fulness. *. * In addition to the place, there must be the presence of the officers constituting a court, the judge or judges certainly." In legal contemplation there can not be a court without a judge or judges. Bouvier says: "The one common and essential feature in all courts is a judge or judges, so essential, indeed, that they are even called *the court.*" An English book says: "In these courts the sovereign is supposed in contemplation of law to be always present; or at least is there represented by the judges, whose power is but an emanation of the prerogative." 2 Broom & H. Com. 21. In *The Michigan, etc., R. R. Co.* v. *The Northern, etc., R. R. Co.,* 3 Ind. 239, it was said that the terms *court* and *judge* are generally synonymous. The predominant idea in all the definitions of the courts and the text-writers is, that a court is a tribunal organized for the purpose of administering justice,

and presided over by a judge or judges. Webster's definition. is: "An official assembly, legally met together for the transaction of judicial business; a judge or judges sitting for the hearing or trial of causes." Our Constitution means by the term *court* judicial tribunals presided over by a judge or judges. Section 2, of article 7, provides that the Supreme Court shall not consist of less than three nor more than five judges. Section 8 directs that the circuit courts shall each consist of one judge. Section 10 declares that the General Assembly may provide by law that the judge of one circuit may hold the courts of another circuit, and section 14 makes. provision for justices of the peace. Throughout all the constitutional provisions runs the controlling idea that a court can not exist without a judge. The Legislature may establish. courts, but can not vest the judicial power in any other tribunals.

A master commissioner is not a court, and judicial duties. which courts only can exercise, can not be conferred upon him.. This seems so plain upon principle that the support of authority is not needed. But authorities are not wanting. In *Hall* v. *Marks*, 34 Ill. 358, a statute was held to be unconstitutional which attempted to confer authority upon the clerk to enter judgment in actions upon written contracts where the amount of the recovery was fixed by the contract, and in cases where the defendant failed to appear and suffered default. The court there said: "The consideration of the facts, and the application of the law to those facts, and the conclusion deduced by the court from the law and the facts constitute a judgment. The power to announce and have enforced this conclusion has. been confided exclusively to the judiciary of our State government." In *Chandler* v. *Nash*, 5 Mich. 409, it was held that a statute, assuming to confer judicial powers upon a notary public, was unconstitutional and void. The court said: "This presents the naked question, whether the legislature possessed the constitutional power to confer such jurisdiction upon the notary. The proceeding authorized by the statute first cited,

for dissolving attachments, is as clearly a judicial proceeding as the trial of a cause in any court of the State; and the power 'to hear and determine' such application under the statute, is as clearly a judicial power as that exercised by a justice of the peace or a judge upon the bench.   It is not like a mere reference to take proof or compute amounts to be reported to a court of record for their judicial action, but it is, '*to hear and determine,*' questions both of law and fact.   Section 1, art. vi, of the constitution, declares : 'The judicial power is vested in one Supreme Court, in Circuit Courts, in Probate Courts, and in justices of the peace.   Municipal courts of civil and criminal jurisdiction may be established by the legislature, in cities.' This, beyond all controversy, vests the *whole* judicial power of the State in the courts and officers named in this section, unless there be some further provision in the same constitution, conferring upon some other court or officer a part of such judicial power, or authorizing the legislature to confer it; and in the  latter case, it can only be possessed or conferred by such further provision expressly, or by necessary implication, which would have the effect to take the case out of the general provision above quoted.   This must be so upon principle, or the constitution itself must be subject to legislative repeal.   It is also well supported by authority.   See 2 Story on Const., secs. 1590 to 1592 ; *State* v. *City of Rockford,* 14 Ill. 420 ; *Gibson* v. *Emerson,* 2 Eng. 173." The views expressed in the cases cited are in harmony with the rule long since declared by this court. In *Flournoy* v. *The City of Jeffersonville,* 17 Ind. 169, it was said :  " Judicial acts, within the meaning of the Constitution of Indiana, are such as are performed in the exercise of judicial power.   But the judicial power of this State is vested in courts.   A judicial act, then, must be an act performed by a court, touching the rights of parties, or property, brought before it by voluntary appearance, or by the prior action of ministerial officers, in short, by ministerial acts.   See *Waldo* v. *Wallace,* 12 Ind. 569, where the constitutional provisions are quoted.   The acts done out of court, in bringing parties into

court, are, as a general proposition, ministerial acts; those done by the court in session, in adjudicating between parties, or upon the rights of one in court *ex parte*, are judicial acts. 3 Blacks. Comm., p. 25."

The power to hear causes and report facts or conclusions to the court for its judgment is not judicial within the meaning of the Constitution. In *Underwood* v. *McDuffee*, 15 Mich. 361, this subject received a careful investigation, and it was there said: "No action which is merely preparatory to an order or a judgment to be rendered by some different body, can be properly termed judicial. A master in chancery often has occasion to consider questions of law and of fact, but no one ever supposed him to possess judicial power. A jury in a court of record determines all the facts in the case, but the judicial power is in the court which enforces the verdict by judgment. This view is very clearly explained by KENT, C. J., in *Tillotson* v. *Cheetham*, 2 Johns. 63, where it was held that the sheriff himself when presiding over a jury of inquest, acted ministerially, because he had no power to give judgment. See also Story on Const., sec. 1640, and seq.; *Daniels* v. *People*, 6 Mich. 381; *Chandler* v. *Nash*, 5 Mich. 409. It is the inherent authority not only to decide, but to make binding orders or judgments, which constitutes judicial power; and the instrumentalities used to inform the tribunal, whether left to its own choice or fixed by law, are merely auxiliary to that power, and operate on persons or things only through its action, and by virtue of it."

The provisions of the act of 1881, concerning the reference of matters to master commissioners, come fully within the principle declared by the court in the case from which we have quoted. The powers enumerated in section 419 are, however, clearly judicial within the definition there given. The vice in this section is, that it assumes to confer upon the master commissioner power to make binding orders and judgments in judicial proceedings, and this can be done only by the courts of the State.

It is undoubtedly true, that there are many cases in which

powers in their nature judicial, may be conferred upon offi-cers and inferior tribunals. *Quasi* judicial powers may be conferred upon tribunals which are not courts in the strict sense of the term. This is well illustrated in the case of *The United States* v. *Ferreira,* 13 How. 40. But the section of the statute here under examination does much more than this; for it assumes to confer authority to exercise functions and powers, which are purely and strictly judicial. These can only be possessed and exercised by the courts.

We have had some difficulty in determining what disposition should be made of this cause; whether we should dismiss the appeal or affirm the decision of the master remanding the appellant to the custody of the sheriff. It is true that the commissioner was not a court, but it is also true that the Legislature assumed to vest him with the powers of a court. Parties have a right to a judicial determination of the validity of such a statute as that under which the commissioner acted. It must be further noted that the statute gives a general right of appeal from all final orders or judgments in *habeas corpus* proceedings. *Henson* v. *Walts,* 40 Ind. 170. The case in hand is entirely unlike that of a person attempting to exercise the powers of a court without the shadow of right or color of authority. There was here color of right, for the Legislature of the State assumed to vest the officer with power to do the act appealed from. We think either party has, in such a case, a right to an adjudication upon the constitutionality of the statute. If the commissioner's final decision had been adverse to the sheriff, the appellee, he could surely have maintained an appeal. He was not bound to treat the order of the master as void, although he might have done so if he chose. A void judgment may be appealed from. *Shoemaker* v. *Board, etc.,* 36 Ind. 175. If the appeal had been by the sheriff, from an adverse decision, the proper judgment would have been one reversing the decision of the commissioner. Where the decision secures a correct result, we think

an affirmance is proper, although it might not be improper to simply dismiss the appeal.

The master commissioner, to whom the appellant made his application for a writ of *habeas corpus*, had no jurisdiction. He had no right to entertain the petition. The result reached was, however, the correct one, for the appellant was rightly remanded to the custody of the sheriff. If the commissioner had remanded the appellant upon the ground that he had no jurisdiction, the result reached would have been the same as that arrived at by him upon the evidence. The appellant is properly in custody, and by affirming the action of the commissioner we leave him there. Affirmance, therefore, leads to the correct result. Where the record shows that the court, or officer, has no jurisdiction, there is no reason for sending back the case, for no steps could be taken in it if it were back in the inferior tribunal. There are cases where it would not be proper to affirm upon the assignment of cross errors, but to that class this case does not belong. On the contrary, it is one where it is proper to affirm on the appellee's assignment of cross errors.

The decision of the commissioner remanding the appellant is affirmed.

Woods, J., doubts the conclusion.