Catherine A. KRUEGER, by Joseph T. Krueger, her father and next friend, and Joseph T. Krueger, Appellant (Plaintiff Below),

v.

Max BAILEY, Steven R. Herald, Robert Dillon and Michigan City Area Schools School Corporation acting by and through its Board of Trustees, Robert G. Taub, Robert C. Frame, Leon Dargis, Sam Johns, James Fisher, Frances Kubik and Harold Werdine, Appellee (Defendants Below).

No. 3–579A128.

Court of Appeals of Indiana,
Third District.

June 30, 1980.

John H. Sweeney, Sweeney, Winski, Dabagia & Donoghue, Michigan City, for appellant.

David L. Abel, Jr., Spangler, Jennings, Spangler, & Dougherty, Gary, for Max Bailey.

Leon R. Kaminski, Newby, Lewis, Kaminski & Jones, LaPorte, for Steven R. Herald.

Merlyn C. Bartlett, Michigan City, and David H. McCain, Sallwasser & McCain, LaPorte, for Robert Dillon and Michigan City Area Schools School Corp.

Robert W. Rund, David J. Emmert, Indiana School Boards Ass'n, Indianapolis, for amicus curiae Indiana School Boards Ass'n.

STATON, Judge.

Catherine A. Krueger and her father, Joseph T. Krueger, filed a negligence action against Max Bailey (Bailey) and Steven R. Herald (Herald) for injuries sustained as the result of a frisbee accident occurring on a school playground. In their complaint they also alleged that Robert Dillon (Dillon, et al.), as the junior high school principal, had failed in his duty to provide adequate supervision of students on the playground during noon recess. In addition, they joined the Michigan City Area Schools School Corporation as a defendant for its failure to institute adequate rules and regulations which would insure adequate supervision of students during noon recess.

Each of the defendants filed a motion for summary judgment. The trial court granted the motions for summary judgment made by Herald and Dillon et al. It denied Bailey's motion for a summary judgment and concluded that the cause should continue as to the remaining defendant.

On appeal, the Kruegers raise three issues for our consideration:

(1) Was the trial court's granting of the summary judgment as to Herald contrary to law?

(2) Was the trial court's finding that Dillon et al. were immune from liability under the Indiana Tort Claims Act contrary to law?

(3) Did the trial court err in finding that Dillon et al. were entitled to a judgment as a matter of law in view of the common law duty to provide adequate supervision of students?

We affirm.

The relevant facts indicate that, on September 24, 1975, Miss Krueger, while walking on school property during her lunch hour, was struck in the forehead by a frisbee. She suffered a cerebral concussion. The frisbee was owned by Herald and had been thrown by Bailey, both of whom were high school students and classmates of Miss Krueger.

## I.

## Motion to Dismiss

In the case at bar, the motions of summary judgment as to Herald and Dillon et al.

were granted; Bailey's motion for summary judgment was denied. Due to the failure of the trial court to resolve all of the issues as to all of the parties, we must determine, as a threshold question whether the judgments entered were "final judgments" from which an appeal may be taken.[1]

■ Based on Ind. Rules of Procedure, Trial Rule 54(B) and TR. 56(C), a summary judgment which disposes of less than all the claims or parties is interlocutory and not final. It is, therefore, not appealable unless the trial court, in writing, expressly determines that there is no just reason for delay and, in writing, expressly directs the entry of judgment thereon. TR. 56(C); *Stanray Corporation v. Horizon Construction, Inc.* (1976), Ind.App., 342 N.E.2d 645; *Kasten v. Sims Motor Transport* (1975), 166 Ind.App. 117, 333 N.E.2d 906. While the court here granted the motions for summary judgment on behalf of Herald and Dillon et al., it failed to expressly determine, in writing, that "there is no just reason for delay." TR. 56(C).

■ Even if we were to assume that these judgments were not "certified"[2] for review, this Court is not prohibited from reviewing the issues decided by the court. Ind. Rules of Procedure, Appellate Rule 4(E) provides:

"No appeal will be dismissed as of right because the case was not finally disposed of in the court below as to all issues and parties, but upon suggestion or discovery of such a situation the appellate tribunal may, in its discretion, suspend consideration until disposition is made of such issues, or it may pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by

subsequent proceedings in the court below."

*See also Parrett v. Lebamoff* (1979), Ind. App., 383 N.E.2d 1107, 1109; *First Equity Security Life Insurance Co. v. Keith* (1975), 164 Ind.App. 412, 329 N.E.2d 45, 48.

■ In order to facilitate the speedy disposition of this case, we will exercise our discretion and consider the merits at this time. The issues as related to Herald and Dillon et al. are severable and no prejudice will result to the remaining party.

## II.

### Summary Judgment as to Herald

On appeal, the Kruegers claim that the trial court's granting of the summary judgment as to Herald was contrary to law. They contend that "it was incumbent on the court in order to have granted the Motion for Summary Judgment in favor of Defendant Steven Herald to have found in the record before it that Defendant Steven Herald could not be liable even though he was a participant in the game."

■ The trial court's findings of fact and conclusions of law[3] are as follows:

"The Court, being duly advised in the premises, hereby finds no genuine issue as to any material fact as to the following:

"1. On September 24, 1975, plaintiff was struck in the right temple by a frisbee.

"2. On September 23, 1977, this personal injury suit was filed naming Steven Herald, among others, as defendant.

"3. Steven Herald was the owner of the frisbee at the time of the accident and has no other material connection with the events which occurred on September 24, 1975.

---

1. Herald's Motion to Dismiss or Affirm this appeal was denied by this Court on January 14, 1980.

2. With respect to TR. 54(B) and TR. 56(C), an express direction for the entry of judgment and an express determination that there is no just reason for delay amount to a "certification that a particular judgment is ripe for review. *Stanray, supra,* at 651.

3. Although a summary judgment may dispose of all the issues, the proceedings upon which it is based cannot be regarded as a "trial" nor are the issues "tried," hence no findings of fact or conclusions of law are required where a summary judgment is granted. The court, however, may make such findings with or without a request. *See* TR. 52(A).

"4. The frisbee which struck the plaintiff was not thrown by Steven Herald.

"5. There are no genuine issues as to any other material facts relevant to defendant Steven Herald.

"Given the foregoing material facts upon which the court finds there to be no dispute, the court hereby renders the following conclusions of law:

"1. The law is with the defendant, Steven Herald on the motion for summary judgment.

"2. Steven Herald had no connection with Plaintiff's injury and committed no negligent act regarding such injury.

"3. A frisbee is not a dangerous instrumentality, and therefore, defendant, Steven Herald, was under no duty to provide any special instructions regarding its use.

"4. The pleadings, disposition, and memoranda show that there is no genuine issue as to any material fact as to defendant, Steven Herald, and that the moving party is entitled to have judgment rendered forthwith."

When reviewing the granting of a summary judgment, we may only look to see whether the trial court correctly applied the law and whether there is any genuine issue of material fact. *Tekulve v. Turner* (1979), Ind.App., 391 N.E.2d 673. The movant has the burden of establishing that there are no material facts in controversy and any doubt must be resolved against the movant. *Ang v. Hospital Corp. of America* (1979), Ind.App., 395 N.E.2d 441. The evidentiary matters before the court are, therefore, construed in a light most favorable to the nonmoving party. *Tekulve, supra.*

Even if the facts are not in dispute, a summary judgment is inappropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from these facts. *Hale v. Peabody Coal Company* (1976), Ind.App., 343 N.E.2d 316. It must be remembered that a summary judgment is a procedure for applying the law to the facts, when no factual con-

troversy exists. It is not a procedure for trying the facts and for determining the preponderance of the evidence. *Ang, supra.*

In the case at hand, the information before the court consisted of the pleadings and Miss Krueger's deposition. On the basis of certain portions of this deposition, the Kruegers claim that Herald was, clearly, a participant in a game of frisbee. Even when analyzed in a light most favorable to the Kruegers, the evidence does not support this interpretation.

They rely upon statements in the deposition which place Herald with a group of boys playing frisbee at the top of a hill. Miss Krueger explained that after she had been struck by the frisbee, the boys came down the hill and asked if she were all right. In pressing their claim, the Kruegers have ignored several portions of the deposition which indicate that the only participants in a frisbee game were Bailey and his brother:

"Q Okay. Did you see anyone else throwing the Frisby [sic] other than Max at the fence; that is, before you got there?

"A I don't recall anyone else.

"Q Well, he'd thrown it at the fence and then come down and retrieve it himself, is that what you are saying, Kathy?

"A No, I seem to recall his brother standing down there to throw it back up at him, but I don't know if maybe that was like from a few days before that or if that was from that day that it happened.

"Q All right. But your best recollection is that maybe Mike Bailey was at the fence area throwing it back to his brother Max, is that correct?

"A Yes, that is correct."

Miss Krueger further testified:

"Q Now, Cathy, I want to just end by asking you this: Did you see Steve Herald do anything on September 24, 1975?

"A No."

Despite Miss Krueger's testimony placing Herald with a group of boys at the top of the hill, there was no evidence of his participation in a game of frisbee at the time of the injury. His presence on the hill is insufficient to demonstrate any participation on his part. There was no evidence as to his involvement in the game.

■ The Kruegers assert that the trial court erred when it failed to determine Herald's status as a participant in the frisbee game. This is not the case. Because the record did not support a conclusion that Herald was a participant, the court found that he "had no connection with Plaintiff's injury" and entered this finding accordingly. There was no error.

■ A possible theory of liability, negligent entrustment, was set out in the complaint. This theory was rejected by the court when it found that a frisbee was not a dangerous instrumentality and that Herald had no duty to provide any special instructions regarding its use. The Kruegers, however, failed to raise this as an issue in their motion to correct errors. Instead, they focused upon various theories of joint liability. Issues cannot be raised for the first time on appeal. Those issues omitted from a motion to correct errors are not preserved for review. *State ex rel. Williams v. Lugar* (1979), Ind.App., 390 N.E.2d 210, 215.

We conclude, therefore, that Herald's motion for a summary judgment was properly granted as there was no genuine issue as to any material fact.

### III.

### Indiana Tort Claims Act

The Kruegers next claim that the trial court's granting of the summary judgment as to Dillon et al. was contrary to law. In granting this motion, the court made the following findings of fact and conclusions of law:

"In regard to said Motion Court makes the same findings of fact that it made on November 21, 1978, concerning defendant, Steven Herald. In addition thereto, the Court also factually finds as follows:

"1. That there was no rule or regulation prohibiting the use of the frisbee on the school playground in question.

"2. The Court finds as to said defendants and the plaintiff there is no genuine issue as to any material fact.

"3. Court further finds that the law is with the Defendants. Specific statutory law applicable is Indiana Tort Claims Act, Indiana Burns Statute 34–4–16.5–3 Immunity from Liability, specifically Section 6 & 7. These sections as applied to the facts in this case indicate that the Governmental entity or employee is immune from liability if the loss results from a failure to adopt or enforce rules and regulations concerning supervision of children on playground facilities, also the manner of supervision of the children on playground facilities in the absence of rules and regulations is up to the discretion of the principal of the facility and said supervision then becomes a discretionary function of said principal employee."

On appeal, the Kruegers attack these conclusions as they relate to the Indiana Tort Claims Act (Act). They argue that Dillon et al. wrongfully claimed immunity under the Act because the supervision of playgrounds and the institution of rules and regulations are ministerial, rather than discretionary acts.[4] The Kruegers also argue, in their brief, that Dillon et al. are barred from claiming immunity as they had not

---

4. [IC 1971] "34–4–16.5–3. Immunity from liability.—A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

    \*    \*    \*    \*    \*    \*

"(6) the performance of a discretionary function;

"(7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment;"

acted within the scope of their employment.[5]

Unfortunately, they failed to argue either of these issues in their motion to correct errors. A close reading of this motion reveals their argument to be constitutional in nature. We will not address these newly raised issues on appeal. *Richardson v. Scroggham* (1974), 159 Ind.App. 400, 307 N.E.2d 80, 85. Any issue not raised in the motion to correct errors is deemed waived. *State ex rel. Williams, supra.* Their arguments, however, as to the constitutionality of the immunity section of the Indiana Tort Claims Act were properly preserved for appeal; we will address them.

The Kruegers contend that the immunity section,[6] IC 1971, 34-4-16.5-3, of the Act is unconstitutional under Ind. Const. art. 1, § 12 and 23 and art. 4, § 24.

■ In *Johnson et al. v. St. Vincent Hospital, Inc., et al.* (1980), Ind., 404 N.E.2d 585 (1980), the Indiana Supreme Court resolved a number of constitutional challenges to the Indiana Medical Malpractice Act. In doing so, it articulated those guidelines to be considered in analyzing the constitutionality of an act. It said:

"In considering these constitutional challenges, we accord this Act with every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality. . . . Before a statute will be declared repugnant to the Constitutions its fatal constitutional defects must be clearly apparent. . . . A statute is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies. . ."
[Citations omitted.]

The Kruegers claim that the immunity section of the Act is in violation of Ind. Const. art. 1, § 23:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

In contending that their rights were violated under this section, the Kruegers are attempting to make an equal protection claim. We note, however, that they fail to provide any authority for their assertions or to present a cogent argument. Their "argument" is confined to one paragraph and consists of little more than a bald assertion of error. We decline to address this unsupported claim of error. *Williams v. State* (1973), 260 Ind. 543, 297 N.E.2d 805; *Southerland v. Calvert* (1974), 162 Ind.App. 606, 320 N.E.2d 803; AP. 8.3(A)(7).

In a convoluted due process type argument, the Kruegers rely upon Ind. Const. art. 1, § 12 and art. 4, § 24. Art. 1, § 12 has been described as a constitutional requirement that the courts shall be open and available. *Hatcher v. State ex rel. Work* (1978), Ind., 376 N.E.2d 1115. The enactment of the Indiana Tort Claims Act has certainly not changed the accessibility of the courts. In fact, the Court in *Board of Com'rs of Delaware County v. Briggs* (1975), 167 Ind.App. 96, 337 N.E.2d 852, 862 noted, with interest, Dean Foust's comment that IC 1971, 34-4-16.5-3 did little more than codify the existing case law. *See also Seymour National Bank v. State* (1979), Ind.App., 384 N.E.2d 1177, 1185 n. 8.

In interpreting Ind. Const. art. 4, § 24, the Indiana Supreme Court in *Perkins v. State* (1969), 252 Ind. 549, 251 N.E.2d 30, 32 said:

"We find no other constitutional provision with reference to suits against the State of Indiana. There is no plain, unequivocal statement in the Constitution that the State of Indiana shall be immune against suits imposing a liability for damages; only an inference might be drawn from the above section. As we read this section it occurs to us that the framers of the Constitution assumed that at common law the State was immune from suit and authorized the legislature to modify such liability to the extent it may see fit, providing that no private acts or special

---

**5.** *See* fn. 4 *supra.*     **6.** *See* fn. 4, *supra.*

acts were passed for the benefit of some individual. We are dealing here not with a constitutional prohibition, but rather with a principal of common law which has its roots in the ancient common law of England which held 'The King can do no wrong' and hence could not be sued in any court of law. . . ."

*See also Mathis v. Cooperative Vendors, Inc.* (1976), Ind.App., 354 N.E.2d 269, 274; *State v. Turner* (1972), 153 Ind.App. 197, 286 N.E.2d 697.

Even though *Perkins* was decided several years prior to the enactment of the Indiana Tort Claims Act,[7] the prescience of our Supreme Court is apparent. Finding no constitutional conflict, the Indiana Supreme Court concluded that the legislature was authorized by the constitution "to modify such liability to the extent it may see fit." *Perkins, supra* 251 N.E.2d at 32. In yet another decision anticipatory of the passage of the Act, the Supreme Court seemed to feel that the legislature was the appropriate forum for policy considerations relating to liability limitations. It concluded that any problems resulting from the abolition of sovereign immunity were "questions which properly belong to the legislature in facing and solving the problems of liability." *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733, 736.

The Kruegers have failed to show us any "fatal constitutional defects" which are "clearly apparent." *Johnson, supra.* Their constitutional challenge to IC 1971, 34–4–16.5–3 must fail.

## IV.

### Common Law Duty

Finally, the Kruegers question whether the court erred in finding that Dillon et al. were entitled to a judgment, as a matter of law, in view of the common law duty to provide adequate supervision of students. They neglected to raise this issue in their motion to correct errors. We will not now discuss it for the first time on appeal. *State ex rel. Williams, supra.*

We conclude, therefore, that the trial court did not err in its granting of the summary judgment to Dillon et al.

Judgment affirmed.

HOFFMAN and CHIPMAN (by designation), JJ., concur.

---

7. The Indiana Tort Claims Act became effective on February 19, 1974.